**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| TAMMY ALEXANDER ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:05-cv-00797-MHT-CSC |
| ) | |
| CAPTAIN D's, LLC; ) | |
| et al., ) | |
| ) | |
|     Defendants. ) | |

**RESPONSE TO PLAINTIFF'S MOTION TO REMAND**

**Captain D's LLC** ("Defendant" or "Captain D's") responds to Plaintiff's Motion to Remand as follows:

**Introduction**

1. Defendant removed this action on August 19, 2005, based on diversity jurisdiction.

2. Nine months later, Plaintiff filed a Motion to Remand. In that motion, Plaintiff does not challenge the diversity-of-citizenship requirement. Instead, Plaintiff alleges only that the Defendant failed to meet its burden of showing that the amount in controversy exceeds $75,000.00.

**Plaintiff's Refusal to Stipulate to the Amount in Controversy**

3.  After Plaintiff filed her Motion to Remand, this Court requested that the parties resolve the matter by stipulation. However, even after filing a motion requesting remand nine months after the case was removed, Plaintiff refused to stipulate that the amount in controversy was below this Court's jurisdictional minimum. The Plaintiff's refusal to stipulate, considered with the allegations in the Complaint and Plaintiff's own deposition testimony, as described below, clearly establishes that the amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs.

**Defendant's Burden**

4.  Plaintiff seeks unspecified compensatory and punitive damages. However, given the nature of this claim and Plaintiff's requests for punitive damages and mental anguish damages, it is very likely that a damage award would exceed $75,000 if the Plaintiff prevails on her claims.

5.  Plaintiff correctly states in her Motion to Remand that, when no specific amount of damages is demanded in a complaint, the removing defendant bears the burden of establishing only by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional limit, and this may be done by sufficient proof that a plaintiff's verdict reasonably may exceed that amount. See, e.g., Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1359 (1996), overruled on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). Defendant met this burden in its Notice of Removal.

**Plaintiff's Complaint**

6. Defendant's Notice of Removal clearly established that the amount-in-controversy requirement has been met based simply on the allegations of the Complaint.

7. The Complaint asserts liability under theories of strict liability in tort; breach of implied warranty of merchantability; negligence; wantonness; reckless misrepresentation; suppression; fraudulent misrepresentation; willful misrepresentation; willful deception; innocent misrepresentation; negligent reckless, or wanton hiring, supervision, and rentention; respondeat superior; and violation of the Deceptive Trade Practice Act.

8. Plaintiff's claims arise out of her alleged consumption of a "bleach-like substance or sanitizing solution" after drinking "three big gulps" of a beverage served to her at Captain D's. (Compl. ¶ 4-5.) Plaintiff alleges that she consumed a substance that "can kill a human being" and that she has suffered severe and serious personal injuries; medical, hospital, and related expenses; and lost wages.

9. As set forth in Defendant's Notice of Removal, a review of similar Alabama cases demonstrates that the amount-in-controversy requirement in this case is met. See Shoney's, Inc. v. Pasley, 711 So. 2d 1026 (Ala. Civ. App. 1997) (plaintiff awarded $75,000.00 in a case alleging that a restaurant served him bleach); Flagstar Enterprises, Inc. v. Davis, 709 So. 2d 1132 (Ala. 1997) (plaintiff awarded $100,000 in compensatory damages and $150,000 in punitive damages in case involving consumption of blood at a restaurant; Hall v. Dollar General, CV-99-0135, Circuit Court of Marengo County (plaintiff awarded $100,000.00 to shopper splashed with a small bottle of liquid Drain-O). These cases are indicative of the amount of damages a jury would award if the Plaintiff prevails in this case.

10. Additionally, as also pointed out in its Notice of Removal, the Plaintiff in this case is seeking mental anguish damages. A review of mental anguish awards in Alabama also demonstrates that the value of Plaintiff's claims exceeds $75,000.00. See, e.g., Wal-Mart Stores, Inc. v. Thompson, 726 So. 2d 651 (Ala. 1998) ($100,000 compensatory damages award, part of which included damages for mental anguish, against retailer whose merchandise fell off shelf and hit plaintiff); Hatchcock v. Wood, 815 So. 2d 502 (Ala. 2001) (majority of $200,000 award to one plaintiff and $600,000 award to another plaintiff was compensation for mental anguish suffered after automobile accident); Liberty Nat'l Life Ins. Co. v. Daugherty, 840 So. 2d 152 (Ala. 2002) ($300,000 mental anguish award in slander case); Homes v. Brooks, 2001 WL 1520623 (Ala. Nov. 30, 2001) ($138,000 mental anguish award for defects in special-order home); Williams v. Williams, 786 So. 2d 477 (Ala. 2000) ($200,000 mental anguish award for loss of employment due to fraud); Southern Energy Homes, Inc. v. Washington, 774 So. 2d 505 (Ala. 2000) ($375,000 mental anguish award for damage to custom-built home); Gray Brown-Service Mortuary, Inc. v. Lloyd, 729 So. 2d 280 (Ala. 1999) ($2 million mental anguish award for mistreatment of spouse's corpse); Life Ins. Co. of Georgia v. Johnson, 701 So. 2d 524 (Ala. 1997) (over $245,000 of $250,000 compensatory damages award represented damages for mental anguish in case involving unnecessary sale of medical coverage to plaintiff); and Duck Head Apparel Co., Inc. v. Hoots, 659 So. 2d 897 (Ala 1995) ($3.5 million mental anguish award to three plaintiffs for fraud claims involving wrongfully failing to pay sales commissions).

11. The Complaint alleges (and, as discussed below, Plaintiff testified in her deposition) that the Defendant knew the Plaintiff's beverage contained bleach and, therefore, is liable for intentional suppression and misrepresentation concerning the contents of the beverage. A review of recent fraud claims in Alabama shows that these claims alone place the amount in

controversy in excess of $75,000.00.  See, e.g., Whittaker v. Southwestern Life Ins. Co., CV-02-41, Circuit Court of Macon County (jury awarded $1,620,000,000 to plaintiff who alleged that insurance agent pocketed premiums and it was discovered that agent was a felon who had been sued before for the same behavior; McClain v. Metabolife, CV-01-801, Northern District of Alabama (one plaintiff was awarded compensatory damages of $150,000 on fraud count and punitive damages of $1,000,000 each for fraud and wantonness; another plaintiff was awarded punitive damages of $75,000 for fraud); Jones v. Warrior Pest Control, et al., CV-01-1037, Circuit Court of Tuscaloosa County (verdict for $285,000 in case where plaintiff alleged that pest control company issued termite-free report to home buyer and failed to disclose a previous report that revealed an infestation); and Lanham v. John Deere, CV-99-0081, Circuit Court of Pickens County (verdict for $280,000 for plaintiff who alleged that manufacturer failed to disclose that its skidders were problematic).

12.    A review of punitive damages awards in Alabama establishes that the amount in controversy exceeds $75,000.00 even in cases where plaintiffs do not allege intentional behavior. See e.g., Kmart Corp. v. West, 779 So. 2d 1188 (Ala. 2000) (upholding $63,000 in compensatory and $250,000 in punitive for premises liability case); Kmart Corp. v. Peak, 757 So. 2d 1138 (Ala. 1999) (affirming awards of $100,000 in compensatory damages and $250,000 in punitive damages for premises liability case); Smith v. Pettway, Macon County Case No. CV-00-054 (February 6, 2003) (jury awarded $1,000,000 in compensatory damages in UIM case despite the plaintiff's chiropractic bills of only $1,033); and Curtis and Arlena Taylor v. Land Air Transport, Macon County Case No. CV-01-224 (August 29, 2002) (jury awarded $500,000 to plaintiffs in compensatory damages based on approximately $15,000 in medicals; no wantonness claim was presented to the jury).

5

13.     Finally, Plaintiff's Complaint makes a claim for damages under the Deceptive Trade Practices Act and seeks actual and treble damages, further increasing the value of the Plaintiff's claims.

14.     The value of all claims by a plaintiff against a defendant can be added together to determine whether the requisite jurisdictional minimum exists.  See, e.g., Bullard v. City of Cisco, 290 U.S. 179 (1933); Nickelson v. Nestles Milk Prods. Corp., 107 F.2d 17 (5th Cir. 1939); and 14A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3704 (1985 & 1995 Supp.).  Each of the thirteen counts in the Complaint seeks compensatory and punitive damages and involves the clear potential of placing more than $75,000 in controversy, and the combination of the demands compels the conclusion that more than $75,000 has been put in controversy in this case.

15.     In the Motion to Remand, Plaintiff argues that a case should be remanded unless it appears that the amount stated in the complaint is not claimed in good faith.  However, as stated above, there is no amount stated in the Plaintiff's Complaint.  Plaintiff's Complaint makes an unspecified claim for damages.  The Plaintiff has never claimed a specific amount or made any type of representation—either in the Complaint or the Motion to Remand—that the amount in controversy is less than $75,000.00, and Plaintiff's reliance on cases involving a specified claim for damages, either below or above a federal court's jurisdictional minimum, is misplaced.

16.     Plaintiff goes on to argue that deference should be given to the amount claimed by a plaintiff.  Plaintiff argues that the "the logic for [giving deference to a plaintiff] … is straightforward—it is presumed that a plaintiff does not claim a large amount in a case that is filed in state court…."  However, not only has Plaintiff not made a specific claim for damages, but it is patently *illogical* for the Plaintiff to argue that she is entitled to a presumption that she

6

does not claim more than $75,000.00 and then refuse to stipulate that she is not claiming more than $75,000.00. Furthermore, as the Plaintiff recognizes in the Motion to Remand, when a state court complaint is indeterminate, as in the instant case, then "there is no representation by plaintiff's counsel that would be entitled to deference." (Pl.'s Mot. to Remand (citing Tapscott, 77F.3d at 1356-57)).

### Plaintiff's Deposition Testimony

17. In addition to the allegations in the Complaint, the Court now has the benefit of the Plaintiff's deposition testimony in determining whether remand is appropriate. While Defendant does not concede the facts to which Plaintiff testified, it is clear from the Plaintiff's deposition testimony that she is seeking more than $75,000.00 and that, if a jury were to find in favor of the Plaintiff on the issue of liability, a plaintiff's verdict reasonably may exceed that amount.

18. With respect to the Defendant's alleged conduct, Plaintiff testified that the Defendant's employees knowingly poured bleach into her glass and served it to her;[1] that the employees were laughing at her after the incident;[2] that the manager and another employee started arguing with each other instead of trying to take care of her when she told them what happened;[3] that an employee told her "we're not going to pay for this," gave her a 1-800 number to call, and hung up the phone;[4] that the Plaintiff did not write or call Defendant after the incident because "after I tried to talk to them at the office or whatever, they was like being real

---

[1] Pl. Dep. at 158 (attached as Exhibit A).
[2] Id. at 155-60.
[3] Id. at 38.
[4] Id. at 137.

stupid or whatever";[5] and that one employee tried to pour out the beverage but the Plaintiff's husband stopped her.[6]

        19.     In describing the incident, she testified that the bleach smell was so strong that nearby customers smelled it and one customer made a statement similar to "Oh my God," when the Plaintiff opened the beverage's lid;[7] that the bleach was so strong that her husband's eyes started burning when she removed the top even though he was not leaning down close to the beverage at the time;[8] and that she had to go straight to the emergency room after leaving the restaurant.[9]

        16.     With respect to her alleged injuries, she testified that drinking the beverage caused her throat to burn within seconds and that she still experiences throat problems today;[10] caused her to feel nauseated for days;[11] caused her to throw up for days, at one point throwing up blood, and caused her to throw up even a year later;[12] caused her throat to feel numb and to itch;[13] caused difficulty swallowing;[14] caused her to lose her voice, which continues today;[15] and caused her not to be able to digest food or hold down food, which continues today.[16] She testified that she never experienced any of these symptoms before this incident.[17] She testified that the incident necessitated changing her entire diet because she now cannot eat certain foods,[18]

---

[5] Id. at 139.
[6] Id. at 39.
[7] Id. at 46.
[8] Id.
[9] Id. at 43.
[10] Id. at 52-53, 131-32.
[11] Id. at 54, 57, 71-72, 106.
[12] Id. at 69-70, 77-78, 80, 92, 95, 105, 129.
[13] Id. at 72, 78.
[14] Id. at 104.
[15] Id. at 64, 106, 110-111, 131, 146.
[16] Id. at 96-99, 146.
[17] Id. at 144.
[18] Id. at 121, 147.

and she blames the incident for problems with her weight going up and down.[19]  Finally, she stated that consuming the beverage caused her to have high blood pressure;[20] that she never experienced high blood pressure before except during pregnancy;[21] and that medical personnel who treated her asked her over and over again why her blood pressure was so high.[22]

17.   She testified that she could not drive or work the next day and that she missed at least two months of work because "it was hurting me in my chest .. [and I] just couldn't deal with the customers, running back and forth to the bathroom, because I didn't know if I had to throw up or not."[23]

18.   With respect to her medical treatment, she testified that the medical personnel said the beverage caused the high blood pressure and directly caused her other symptoms;[24] that doctors have told her that what happened to her was "not a good thing";[25]  that she had to have a procedure where she underwent anesthesia to determine why she was still having problems and that the doctor found that drinking the beverage caused a hiatal hernia;[26] that her doctor said she needs to "take this serious[ly]";[27] that she should have surgery "as soon as possible" to correct the hernia;[28] and that it could affect her later on.[29]

19.   Plaintiff also testified about the poison control center's involvement in the case. According to the Plaintiff, the poison control center was so concerned over this incident that they contacted her about the incident, continued to call her every day for a week, and tried to

---

[19] Id. at 148.
[20] Id. at 52, 93.
[21] Id. at 63-64.
[22] Id. at 59-61, 63, 93, 94.
[23] Id. at 74-77, 119-120, 123.
[24] Id. at 94, 102-103, 118-19.
[25] Id. at 61-62, 96.
[26] Id. at 115-118.
[27] Id. at 126.
[28] Id. at 124.
[29] Id. at 128.

convince her to sign an arrest warrant against Captain D's.[30]  She further testified that the poison control center said there had been several violations at Captain D's and that the health department found "stuff missing, like leaving stuff around on the counter, like Clorox laying over by the utensils… and different stuff he said wasn't supposed to be, you know, on the counter at the time with food."[31]

20.  The Plaintiff summed up the incident by saying that it "has totally changed" her, in that it has affected her daily eating habits and the way she has to prepare meals for her family.[32]  Plaintiff also blames the incident for a deterioration in her sex life with her husband.[33]

## Conclusion

21.  As stated above, Defendant's Notice of Removal, which was based solely on the allegations and demands in the Complaint, established by a preponderance of the evidence that the amount in controversy in this case is greater than $75,000.00.  The fact that the amount in controversy exceeds $75,000.00 has been confirmed by the Plaintiff's refusal to stipulate to damages below $75,000.00 and by the Plaintiff's deposition testimony about her injuries and continuing health problems, about how the incident completely changed her life, and about how the Defendant acted knowingly and intentionally and then laughed at her.  Thus, Defendant has met its burden of establishing by a preponderance of the evidence that the amount in controversy is greater than $75,000.00 by showing that a plaintiff's verdict reasonably may exceed that amount.  Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1359 (1996), overruled on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).

---

[30] Id. at 87-91.
[31] Id. at 89.
[32] Id. at 149-151.
[33] Id. at 151-52.

WHEREFORE, Defendant respectfully requests this Court to deny Plaintiff's Motion for Remand.

> Respectfully submitted,
>
> /s Angela R. Rogers
> Charles A. Stewart III (STE067)
> Angela R. Rogers (RAI017)
> Bradley Arant Rose & White LLP
> The Alabama Center for Commerce
> 401 Adams Avenue, Suite 780
> Montgomery, AL 36104
> Telephone: (334) 956-7700
> Facsimile: (334) 956-7701
>
> **Attorneys for Defendant Captain D's, LLC**

CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Benjamin H. Farrow
> The Anderson Law Firm
> 7515 Halcyon Pointe Drive
> Montgomery, AL  36117

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: not applicable.

> s/ Angela R. Rogers
> Angela R. Rogers (RAI017)
> Bradley Arant Rose & White LLP
> The Alabama Center for Commerce
> 401 Adams Avenue, Suite 780
> Montgomery, AL 36104
> Telephone: (334) 956-7700
> Facsimile: (334) 956-7701
> Email: arogers@bradleyarant.com